JOHN LONDON, Adm'r, v. WILMINGTON & WELDON RAILROAD COMPANY.

*Wills, probate of, conclusive.*

1. The probate of a will in common form and the grant of letters testamentary by the probate court, is conclusive as to the fact that there is a will

and an executor thereof, so long as the adjudication of probate stands unreversed: it cannot be collaterally impeached in another court. (Cases in which the probate court acts without jurisdiction of the particular case, reviewed by SMITH, C. J.).

2. Whether the letters be void or voidable, a *bona fide* payment of a debt due to the estate will be a discharge to the debtor.

(*Granberry* v. *Mhoon*, 1 Dev., 456; *Ro. Nav. Co.* v. *Green*, 3 Dev., 434; *Barwick* v. *Wood*, 3 Jones, 306; *Collins* v. *Turner*, Term Rep., 105; *Johnson* v. *Corpening*, 4 Ired. Eq., 216; *Springs* v. *Erwin*, 6 Ired., 27; *State* v. *White*, 7 Ired., 116; *Smith* v. *Munroe*, 1 Ired., 345; *State* v. *Washburn*, 3 Ired., 557; *Hyman* v. *Gaskins*, 5 Ired., 267; *State* v. *Shirley*, 1 Ired., 597; *State* v. *Pool*, 5 Ired., 105, cited, commented on and approved).

CIVIL ACTION tried at Fall Term, 1882, of NEW HANOVER Superior Court, before *MacRae, J.*

Upon the death of Eli W. Hall in the year 1865, several scripts purporting to contain his will, with certain successive codicils, all without date and all duly attested, except the last, in which he designated Edward D. Hall and John Dawson executors, were offered by them for probate in the county court of New Hanover, the residence of the deceased, and, upon the evidence of one of the subscribing witnesses to the original instrument and of another to the last attested codicil, which revokes all preceding it, were declared and adjudged to be the "last will and testament of the said Eli W. Hall."

The deceased at his death owned eighteen shares of the capital stock of the defendant corporation, which the said Edward, acting as executor, caused to be transferred; to-wit, sixteen shares on November 28, 1868, and the other two in May, 1872, to different purchasers to whom the same had been sold. The tranfer was affected, under the charter and according to the by-laws of the company, by the surrender of the first certificate of stock and the issue of new to the assignee, and the making the proper entries of the transfer upon its books.

In the month of April, 1881, John London, the plaintiff, produced before the probate judge the last attested and repealing script of those declared to constitute the will of the testator,

74

and, under regular proceedings for an *ex-parte* probate, the same was adjudged, upon the testimony of T. D. Haigh, a subscribing witness thereto, proving its execution in due form of law, to be "the last will and testament" of the said testator, and sufficient in law to pass his real and personal estate. Thereupon, letters of administration, with the will annexed, were issued to the plaintiff.

The present action was commenced on May 13, 1881, to compel the defendant to issue to the plaintiff, as administrator, a certificate for 18 shares of the stock, alleged to have been thus wrongfully and without legal authority transferred to others, and to account for all dividends and profits thereon declared and paid since the testator's death; or, if disabled by its charter from making a further increase of its capital stock, to pay over to the plaintiff the value of the stock and accruing profits or interest thereon.

The defendant insists that the transfer of the stock was rightfully made under the direction and authority of Edward D. Hall, to whom, and his associate, letters testamentary had been duly and regularly issued by a court of competent jurisdiction, and that it is not in any way responsible to the plaintiff's demand.

The court held that the defendant was protected, in transferring the stock, by the adjudication in the county court and the award of letters testamentary, and that the action could not be maintained. Judgment was accordingly rendered against the plaintiff for costs, and he appeals.

*Messrs. MacRae & Strange,* for plaintiff.
*Messrs. George Davis* and *Stedman & Latimer,* for defendant.

Smith, C. J., after stating the above. The only question arising upon the appeal is whether the granting of the letters testamentary is void, so as to afford no sanction to the defendant's act in transferring the stock, and to leave the company exposed

to the action of the party to whom the letters of administration have since been granted, without any direct revocation of the former adjudication upon the same instrument.

The argument on either side of the proposition has been full and exhaustive, and, with the numerous references to decided cases and the works of elementary writers, has greatly aided us in arriving at a satisfactory conclusion.

The general rule is well settled that the judgment of the probate court, in which is vested exclusive jurisdiction to pass on wills of personalty (and in this state by statute of realty also) and grant letters testamentary or of administration, is conclusive of the right determined, and is not exposed to impeachment collaterally in another court where the effect of the action is to be considered.

A probate in common form, unrevoked, is conclusive in courts of law and equity as to the appointment of an executor and the validity and contents of a will; and it is not allowable in an action to show that another was appointed executor. This is the principle announced in the elementary books. Williams' Ex'rs, 339; Toller, 76.

"The probate," says BULLER, J., "is conclusive till it be repealed, and no court of common law can admit evidence to impeach it"; and, referring to the analogy attempted to be drawn from the case of a grant of letters of administration upon the estate of a living person supposed to be dead, he adds, "that in such case the ecclesiastical court has no jurisdiction, and the probate can have no effect. The distinction in this respect is this: if they, the courts, have jurisdiction, their sentence, so long as it stands unrepealed, shall avail in all other places; but where they have no jurisdiction, their whole proceedings are a nullity." *Allen* v. *Dundass*, 3 D. & E., 125.

"Whether there is a will, and who is the executor thereof," is the remark of HENDERSON, J., "are matters of ecclesiastical cognizance, and consequently the decision of the ecclesiastical courts on the subject is conclusive. They adjudicate that this

is the will of A, and that B is the executor thereof, and when in other courts it is necessary that B should sustain the character of executor, *that adjudication is conclusive"*; and he adds, that the letters testamentary are a testimonial given by the court that the party has been adjudged to be executor, and further, that it is needless to append a copy of the will, as it can answer no purpose. *Granberry* v. *Mhoon*, 1 Dev., 456. The principle is affirmed by the same judge in *Ro. Nav. Co.* v. *Green*, 3 Dev., 434.

To the same effect is the language of PEARSON, J., in commenting on the difference between an *ex-parte* probate of a deed for registration and of a will. "It would seem," he says, "that where a court has exclusive jurisdiction and a case is properly constituted before it, its action must be conclusive until reversed. It is otherwise where there is a want of jurisdiction; or where it appears on the face of the proceeding that the case was not properly constituted before it, as if process was not served on the party whose rights are to be affected by the judgment or decree." *Barwick* v. *Wood*, 3 Jones, 306.

The general principle being established, the next inquiry is as to the cases in which the probate court acts without possessing jurisdiction in the particular case; and the numerous adjudications of this court are entirely in harmony with the rule laid down by reliable text writers.

It is an unwarranted assumption of jurisdiction when the probate court grants letters in a county in which the decedent (though a resident of the state) did not there have his domicil. *Collins* v. *Turner*, N. C. Term Rep., 105; *Johnson* v. *Corpening*, 4 Ired. Eq., 216:

Or, if a non-resident, in a county in which he had no effects or *bona notabilia*—*Smith* v. *Munroe*, 1 Ired., 345:

Or, where an administration *cum testamento annexo* is granted, and there is an executor appointed in the will who has not renounced—*Springs* v. *Erwin*, 6 Ired., 27:

Or, upon the estate of a living person supposed to be dead—
*State* v. *White*, 7 Ired., 116:

Or, general letters, where there is a pending contest about the
probate of the will—*State* v. *Washburn*, 3 Ired., 557.

If the person, on whose estate the court undertakes to grant
letters testamentary or of administration, be dead and at the
time of his decease have his domicil or have *bona notabilia* to
be administered, the jurisdiction exists, and " it matters not how
irregular may be the proceedings of the court, or how absurd
and incomprehensible its conclusions, they afford sufficient author-
ity to cover the *bona fide* transactions of its appointees. 2 Red.
on Wills, ch. 4, § 15, par. 3, note.

The facts of the present case meet the test and conditions of
the prescribed rule. The deceased at his death was domiciled
and had his residence in New Hanover county, over which the
county court exercised exclusive original jurisdiction—papers,
testamentary in their character, and most of them authenticated
by the necessary subscribing witnesses, were produced before the
court, and all adjudged to be the will of the deceased, including
the script, whose sole office was the nomination of executors—
and letters testamentary accordingly issued to the nominees.

The only alleged error in the adjudication was the admission
to probate of a revoked script and the unattested *addendum* which
appoints the executors; and this error is clearly one not to be
corrected in a common law court, or assailed in a common law
proceeding. It is enough to say that a tribunal of competent
general jurisdiction, and possessing special jurisdiction to decide,
has determined the script to be and constitute the will of the
deceased, and that the persons nominated are the executors thereof.

Many of the references in the appellant's argument are *ex-parte*
*probates* of deed, the distinction between which and the judicial
determination in the probate of wills, is so obvious and plain as
to admit of no analogy between them.

But if the defective probate renders the action of the court

void instead of voidable, it by no means follows that the surrender of the stock to the executors for their disposal, made in good faith, which is not drawn in question, subjects them to a second accountability to the plaintiff. It would be a harsh and rigorous rule to be allowed this operation upon an innocent debtor or holder of property of the decedent.

Referring to a void grant of administration and the pursuit and recovery of property by the rightful executor from the person to whom the administrator had sold it, NASH, J., observes: "With respect to payment, however made to an executor, or administrator, by a debtor of the estate, the rule is different. If the grant be made by a court of competent jurisdiction, *whether the letters be void or only voidable, a bona fide payment of a debt due to the estate will be a discharge to the debtor.* In *Allen* v. *Dundass,* 3 Term, 125, it was held that a payment made to the executor of a forged will, who had obtained probate of it, the supposed testator being dead, was a valid discharge to the debtor, although the probate was afterwards declared void by the ecclesiastical court," on the principle, "that if the executor had brought suit against the debtor, the latter could not have controverted *the title of the executor so long as the probate was unrepealed,* and the debtor was not obliged to wait for a suit, when he knew no defence could be made to it." *Hyman* v. *Gaskins,* 5 Ired., 267.

In *Jochumsen* v. *Bank,* 3 Allen (Mass.), 87, cited by the appellee, it is expressly held that a grant of administration upon the estate of a living man, from long absence presumed to be dead, was an absolute nullity, and he could reclaim and recover his own funds from the debtor who had paid them over to the appointee; and so it has been decided that a bond given by an administrator, under the same circumstances, to secure the discharge of the imposed trust and payable to the state, could not be made available to the next of kin suing on it, as relators, for their distributive shares. These decisions may be supported upon the ground of a total want of jurisdiction to act, but are not precedents for the contention that an erroneous or irregular adjudica-

tion of a probate court, rightfully taking cognizance of the cause, affords no defence to such as, in good faith relying upon it, account for funds of the deceased and pay over to the judicially accredited representative of the estate.

The decision in State v. White, supra, rests mainly upon the want of power in the court to accept a bond from the administrator, appointed upon the estate of a living person, made payable to the state, because it could only be delivered when death had occurred—in this particular following the ruling in State v. Shirley, 1 Ired., 597, which was afterwards corrected by statute (Bat. Rev., ch. 80, § 16). State v. Pool, 5 Ired., 105.

The force ascribed to the unreversed adjudication of probate finds some support in the enactment of the general assembly on the subject:

Thus, if after letters of administration or testamentary issue, a will, or, in the latter case, a later one is found and proved, the judge revoking the letters first issued is required to give written notice to the person to whom the first letters issued, previous to the service of which notice, "the acts of such person, done in good faith, are valid." Bat. Rev., ch. 119, § 35. And again, it is expressly declared, in section 39, that no will shall be effectual to pass real or personal estate, unless it shall have been duly proved and allowed in the probate court; and that when so proved, it "shall be conclusive as to the execution thereof against the heirs and devisees of the testator, whenever the probate thereof, under the like circumstances, would be conclusive against the next of kin and legatees of the testator."

Confidence in the integrity of judicial proceedings, when a case is properly constituted in court, and the court has jurisdiction, should not be shaken, unless to avert very disastrous consequences and in a plain case. Where would there be safety for a debtor when paying his debt to one declared and adjudged to have authority to receive it, if he is required to examine the records, and revise and decide upon the correctness of the adjudication, at the peril of being made responsible a second time, if he should err in opinion

upon such examination? "I have no authority," remarked Lord ELDON, passing upon an injunction and receiver, "to say that an instrument, of which the ecclesiastical court has granted probate, is not a will. * * * I do not know on what ground the ecclesiastical court has granted probate. It is enough for me, that, having granted probate, I am concluded from examining the question whether there is a will or not, *or whether Dr. Curling is executor or not. Thornton* v. *Curling,* 8 Sim., 310; 2 Red. Wills, ch. 1, § 5, par. 5.

Without ascertaining how the law may have been declared elsewhere, we feel bound by the well understood rules, accepted and acted upon in this state, sustained by sound reasoning and most conducive to the interests of all; and, accordingly, we hold that the act of the defendant was lawful, and exonerated it from further liability for the stock to the present plaintiff.

It must be declared there is no error, and the judgment rendered below is affirmed.

No error.                                              Affirmed.