Belknap.  }
Feb. 6, 1906. }

                                                                    $\begin{vmatrix} 73 & 495 \\ 74 & 510 \end{vmatrix}$

KNIGHT & a., Ap'ts, v. HOLLINGS & a.

In a proceeding to set aside the probate of a will on the ground of non-residence of the testator, it must be presumed that the judge who approved the instrument found that the testator was last an inhabitant of the county, or that he had estate therein at the time of his decease ; and if the will was proved in common form, it is also presumed that there was no contest as to its probate.

The court of probate of the county within which personal property of a non-resident is situated has jurisdiction to approve and allow his will, although the instrument has not been probated in the state of his domicile.

The heirs-at-law of a testator are not entitled as of right to notice of the pendency of a proceeding for the probate of his will; and its probate without previous notice to them is conclusive of the genuineness and validity of the instrument until it is avoided as the result of a direct attack upon it.

Where the heirs-at-law of a testator have neglected to seasonably take an appeal from the allowance of his will, and have failed to file within the time limited by statute a petition for a probate in solemn form, they cannot maintain a proceeding to set aside the original decree except upon some substantial ground which renders its execution against conscience, and of which they were prevented from availing themselves by fraud, accident, or mistake, unmixed with any wrong or negligence on their part.

An action to set aside the probate of a will is barred by laches if begun after an unexplained delay of more than twelve years from the date of the decree attacked.

APPEAL, from a decree of the judge of probate of Belknap county relating to the probate of Albert K. Tilton's will and the settlement of his estate.   Facts agreed.

The testator was born in Tilton in 1841, and resided there until after the close of the Civil War, when he removed to Denver, Colorado, where his legal residence was thenceforth until March, 1888.   He became ill in the early part of 1888, and in March came to the home of his brother, James H. Tilton, in Laconia, with the latter and a cousin, upon their return from a visit to him.   He brought here much of his personal estate.   Soon afterward his furnishings of the apartments in a club-house, occupied by him for several years as a home, were taken to his brother's house, and the apartments were vacated.   After remaining at his brother's house several weeks he went to a sanitarium in Massachusetts for treatment, and remained there until his death, May 19, 1891.   Upon due proceedings before the probate court of Belknap county, he was decreed to be insane in May, 1888, and James was appointed

guardian over him. James accepted the trust and acted as guardian until Albert's death.

Albert made a will at Denver, October 9, 1884, describing himself therein as of that city. By it he gave, in effect, one half of his property to his five nieces,—the defendants and another niece now deceased,—and the other half to James, to hold in trust and pay the income to a brother, George, a sister, Mrs. Knight, and a niece, Mary Knight, or such of them as should be living at his decease, during their lives and the life of the survivor; and upon the death of the survivor, to pay the principal in equal portions to such of the five nieces as should then be living. He nominated James as executor of the will. George and Mrs. Knight died before the testator. Mary, the plaintiffs, and one of the five nieces were children of Mrs. Knight. The plaintiffs are not mentioned in the will.

The will was presented to the probate court of Belknap county by James, and was allowed in common form in June, 1891.. In the petition for the allowance of the will Albert was described as late of Laconia, having estate in Belknap county. James was appointed executor, gave bond in that capacity, and furnished an inventory of the estate as required by law. The estate consisted of real estate situated in Colorado, valued at $26,440, and personal property valued at $184,576.39. The personal property was all in Belknap county, taken there in part by Albert when he went there, and in part by James while acting as guardian. James acted as executor until his decease, March 15, 1894. He paid the five nieces $80,000 and set apart a like sum for the trust, as provided in the will. The executor of James' will settled a final account of the administration of Albert's estate with the probate court in November, 1894. Albert's will has been fully executed, excepting the sum of $80,000 that was in possession of the trustee upon the death of Mary Knight in September, 1903. More than $40,000 of the income of this fund was expended in the maintenance of Mary in the family of one of the plaintiffs. The principal of the fund, $80,000, is in the possession of a trustee appointed after James' death.

In September, 1891, James petitioned the county court of Denver, Colorado, for the proof and allowance of Albert's will and for the issue of letters testamentary to himself. The petition was granted the same day, and he gave a bond as executor and returned an inventory of the real estate situated in Colorado, which was approved by the court. After James' death, an administrator *de bonis non* was appointed there, who completed the administration of the estate, and in October, 1898, settled a final account thereof with the court after due notice, and was discharged from the trust.

In all these proceedings Albert was described as a resident of Belknap county, New Hampshire. Shortly thereafterward the real estate was sold, and the proceeds were divided according to the provisions of the will.

The plaintiffs are heirs-at-law of Albert. They were more than twenty-one years of age at the time of his death, were then or since under no legal disability, and were then and ever since have been residents of Massachusetts. In January, 1904, they filed with the probate court of Belknap county a petition to have the probate of Albert's will and all subsequent proceedings thereunder set aside and revoked, and the will turned over to the proper court in Colorado, on the ground that the Belknap county court had no primary jurisdiction of such probate and subsequent proceedings, because Albert's legal residence and domicile at the time of his decease were in Denver. The petition was dismissed, and this appeal is from the decree of dismissal.

The plaintiffs offer to prove that Albert's home and legal residence, from the time of his removal to Denver to the time of his decease, were there; that in the early part of 1888, and for a long time prior thereto, he was insane, and was removed to New England by his brother and cousin on account of his insanity and for treatment; that at no time after his removal did he possess mental capacity sufficient to make an election of Laconia as his residence; that he had no property in New Hampshire when he left Denver; that his brother and cousin brought a portion of his property along when he came, for the purpose of protecting it, on account of his mental condition and removal here for treatment; and that the plaintiffs received no notice and had no knowledge of the guardianship proceedings or of the proceedings relative to the probate of the will. If these facts are material, they are to be found at a hearing in the superior court. The probate laws of Colorado are a part of the case.

The defendants moved to dismiss the appeal; and the questions of law arising upon the foregoing facts and motion were transferred from the November term, 1904, of the superior court by *Chamberlin*, J.

*Jewett & Plummer*, for the plaintiffs.

*Mitchell & Foster*, for the defendants.

CHASE, J. Judges of probate have exclusive, original jurisdiction of the probate of wills and the settlement and distribution of the estates of deceased persons. Const., *art.* 79; P. S., *c.* 182, *s.* 2. Although their courts have no jury and the proceedings are

not according to the course of the common law, " they are to be regarded as courts of general jurisdiction on the subjects to which they relate, and are entitled to all the presumptions in favor of their proceedings which are allowed in the case of other tribunals ·of general jurisdiction, more especially as they are now made by ;statute courts of record." *Stearns* v. *Wright*, 51 N. H. 600, 609 ; *Kimball* v. *Fisk*, 39 N. H. 110, 119, 120 ; P. S., *c.* 182, *s.* 1. As to the particular judge of· probate who shall have jurisdiction of the probate of a will in a given case, it is provided that it shall be the judge for the county in which the deceased person " was last an inhabitant; but if such person were not an inhabitant of this state," it shall be " the judge for any county in which such person had estate." P. S., *c.* 182, *s.* 8.

Albert K. Tilton's will was presented to the judge of probate for Belknap county, accompanied by a petition signed by the executor nominated therein, praying for its probate and alleging, in substance, that Tilton was last an inhabitant of that county and had estate in the. county at the time of his death. These allegations showed that the judge had· jurisdiction of the probate of the will, both by reason of Tilton's residence and his having estate in the county at the time of his death. The judge could not decline or neglect to act upon the petition without violating the duty imposed upon him by law and disregarding his official oath. In acting upon the petition, it is obvious that he had authority to determine, and must determine, the jurisdictional questions of fact above mentioned. They laid at the very threshold of the procedure. As his court was one of general jurisdiction in respect to the probate of wills, and as he assumed jurisdiction of the probate of this particular will and proceeded to approve and allow it in common form, it must be presumed that he found that Tilton was last an inhabitant of the county, or that he had estate in the county at the time of his decease, or that both these facts existed. As the will was proved in common form, it must also be presumed that there was no contest before the court as to its probate. P. S., *c.* 185, *s.* 6 ; *Huntress* v. *Effingham*, 17 N. H. 584 ; *State* v. *Rye*, 35 N. H. 368 ; *Ela's Appeal*, 68 N. H. 35 ; *Wilson* v. *Otis*, 71 N. H. 483 ; *McFeely* v. *Scott*, 128 Mass. 16, 17 ; *Stanley* v. *Safe Deposit Co.*, 87 Md. 450 ; *Corrigan* v. *Jones*, 14 Col. 311 ; Vanfleet Col. At., *ss.* 60 *et seq.*, 637.

According to the facts appearing in the record, including those which the plaintiffs offer to prove, Tilton's personal property— nearly nine tenths of his entire estate—was in Belknap county at the time of his decease, having been previously taken there by himself and his guardian for preservation and protection. The plaintiffs do not question this fact, nor allege that there was any

wrong done or attempted in the removal of the property to that county; on the other hand, they offer to prove that it was done to protect the property from loss, in view of Tilton's mental condition,—certainly a prudent thing to be done under the circumstances. The *situs* of the property there, in and of itself, gave the judge of probate of the county jurisdiction of the probate of the will, even if Tilton's domicile was in Denver. To that extent the jurisdiction of the probate court affirmatively appears and does not depend upon presumption.

Neither the statute nor the common law required that the will should be probated first in the state of his domicile; it might be probated in this state first and in Colorado later, even if his domicile was in the latter state. *Tilton* v. *O'Connor*, 68 N. H. 215; *Gordon's Case*, 50 N. J. Eq. 397, and authorities cited; *In re Clayson Estate*, 26 Wash. 253. "Where a will is detained by a foreign court, so that the proponent cannot produce it for probate, secondary evidence thereof is admissible, as much so as if it were a lost will." 1 Woern. Admin., *s.* 221; *Loring* v. *Oakley*, 98 Mass. 267, 269; *Russell* v. *Hartt*, 87 N. Y. 19; *Robertson* v. *Pickrell*, 109 U. S. 608, 610. If the probate in Colorado was made upon the filing of a certified copy of the will, as seems probable, the plaintiffs might have appeared there and raised the question of domicile, as was done in this state under similar circumstances. *Stark* v. *Parker*, 56 N. H. 481.

Probate of wills in common form was customary at common law, and has been practiced in this state ever since the beginning of organized government here. Smith (N. H.) 515, 516; 1 N. H. Prov. Laws (Batch. ed.) 105, 206, 815. The early statutes of the province and state contain no special provisions relating to the form of probate, but leave that matter to be controlled by the common law. Upon the revision of the statutes in 1842, it was provided that a will might be proved in common form upon the testimony of one of the subscribing witnesses if its probate was not contested, and that it might be done without previous citation and notice to the parties interested. R. S., *c.* 157, *s.* 6; *Ib.*, *c.* 155, *s.* 1. These provisions do not materially change the common law on the subject, and, in substance, they are still a part of the statute law of the state. P. S., *c.* 187, *s.* 6; *Ib.*, *c.* 185, *s.* 2.

The plaintiffs say they are not bound by the judge's decree allowing the will, because no notice of the proceeding was given to them and they were ignorant of its pendency. This proposition assumes that they were entitled to notice the same as if the proceeding had been according to the course of the common law— an assumption that is erroneous. The rights which they assert are not contractual rights, but are wholly dependent for existence

upon the statutes providing for the descent and distribution of the estates of deceased persons. By these statutes, the rights are not absolute, but are subject to the condition precedent, that the estate of the deceased person is not devised and bequeathed. The statutes read: "The real estate of every person deceased, not devised, . . . shall descend," etc.; "the personal estate of a person deceased, not bequeathed, . . . shall be distributed," etc. P. S., *c.* 196, *ss.* 1, 6. The real and personal estate of a deceased person may be devised and bequeathed by a will duly executed, and proved without citation and notice to the heirs of the testator. By virtue of the condition attached to an heir's right, it may be defeated without formal notice to him of the existence of a will or of the pendency of the proceeding for its probate. The omission of notice does not appear to be unreasonable when it is considered that ordinarily the heirs learn of the decease of the person very soon after it occurs, and that their interests naturally and strongly urge them to promptly ascertain the nature, extent, situation, and disposition of his estate. They are put upon inquiry by the death of the party, and are reasonably chargeable with notice of all facts concerning their rights that they would learn upon diligent inquiry. *Starkey* v. *Kingsley,* 69 N. H. 293, 294; *Johnes* v. *Jackson,* 67 Conn. 81. The plaintiffs were not entitled as of right to notice of the pendency of the proceeding in Belknap county for the probate of the will. It follows from the foregoing considerations, that the plaintiffs' position that the probate of Tilton's will without previous notice is void as to them cannot be sustained. At most it is only voidable, and voidable only as a result of a direct attack upon it. *Nichols* v. *Smith,* 26 N. H. 298; *Kimball* v. *Fisk,* 39 N. H. 110, 117. Until avoided, it is conclusive of the genuineness and validity of the will. P. S., *c.* 187, *s.* 1; *Strong* v. *Perkins,* 3 N. H. 517, 518; *Bryant* v. *Allen,* 6 N. H. 116, 117; *Merrill* v. *Harris,* 26 N. H. 142; *Tebbetts* v. *Tilton,* 31 N. H. 273, 284; *Simmons* v. *Goodell,* 63 N. H. 458. See, also, *London* v. *Railroad,* 88 N. C. 584; *Tucker* v. *Whitehead,* 58 Miss. 762; *West* v. *Waddill,* 33 Ark. 575; *Kearney* v. *Kearney,* 72 Cal. 591.

Two methods of making a direct attack upon the decree of a judge of probate are provided by statute: (1) An appeal from the decree, to be taken not later than sixty days after the decree is made (P. S., *c.* 200, *s.* 1), and (2) a petition to have the probate re-examined in solemn form, to be filed within one year after the date of the decree. P. S., *c.* 187, *s.* 7. If in a proceeding of the latter kind the probate is not confirmed, "the will and probate shall be void." *Ib.,* *s.* 8. Neither of these methods was pursued by the plaintiffs; but the nature and effect of the latter

method, especially, have an important bearing upon the questions before the court. At common law, an interested party might obtain probate in solemn form, of a will already probated in common form, after the lapse of a long time subsequent to the former probate. Sir William *Wynne* said in *Hoffman* v. *Norris*, 2 Ph. Ecc. 230 : " I do not know that there is any specific time which limits a party." It has been said that it could not be done after the lapse of thirty years. *Noyes* v. *Barber*, 4 N. H. 406. See, also, Schoul. Ex. (3d ed.), *s.* 69 ; 1 Will. Ex. (7th Am. ed.) 393 ; 1 Woern. Admin., *s.* 216. In this state of the law, courts were reluctant to require a second probate of a will after a long lapse of time, unless there were substantial reasons for it. They granted no indulgence to parties seeking re-probate, but held them strictly to their legal rights, and were sometimes astute in discovering reasons for denying the applications. *Hoffman* v. *Norris*, 2 Ph. Ecc. 230 ; *Newell* v. *Weeks*, 2 Ph. Ecc. 224, 230 ; *Merryweather* v. *Turner*, 3 Curt. Ecc. 802 ; *Blake* v. *Knight*, 3 Curt. Ecc. 547, 553. In many of the states statutes have been enacted limiting the time within which an application for a second probate may be made. 1 Woern. Admin., *s.* 215 and note. In this state such an act was passed in 1814, by which it was provided that " no hearing for the probate of any will in solemn form shall be granted, had, or sustained, by or before any probate court in this state, unless petitioned for within six years next after the probate of said will in common form." Laws, *ed.* 1815, *p.* 170. This act continued in force until the revision of the probate laws in 1822, when it was enacted that an interested party should be entitled to have the probate of a will, made without notice, re-examined upon application to the judge of probate, "provided that no such application shall be sustained unless preferred within one year from the time of the probate, nor if an appeal from such probate has been prosecuted." Laws, *ed.* 1830, *p.* 357, *s.* 8. Upon the enactment of the Revised Statutes in 1842, this provision was changed to the following form : "Any party interested shall be entitled to have the probate of any will, which has been proved without notice, re-examined, and the will proved in solemn form before the court of probate, at any time within one year of such probate, if no appeal from such probate has been prosecuted before the superior court." R. S., *c.* 157, *s.* 7. This was a change of form merely. *Stewart* v. *Harriman*, 56 N. H. 25. The only change since made is the substitution of " may " for " shall be entitled to," in the first line of the section. P. S., *c.* 187, *s.* 7. These statutes also severally contain a provision by which, if an interested party was disabled from protecting his rights by reason of infancy, coverture, imprisonment, absence from the United States,

or want of mental capacity, he shall be entitled to have the probate re-examined at any time within two years, formerly,—one year latterly,—after the disability is removed. Laws, *ed.* 1815, *p.* 170; Laws, *ed.* 1830, *p.* 358, *c.* 2; R. S., *c.* 157, *s.* 9; P. S., *c.* 187, *s.* 9. Thus it appears that the right of an interested party to have the probate of a will in common form re-examined and the will proved in solemn form is limited in duration to one year after the probate, or in case of disability, one year after the disability is removed. Although the present statute does not declare in express terms, as the original statute did, that "no hearing for the probate of any will in solemn form shall be granted, had, or sustained, . . . unless petitioned for in one year," such manifestly is its meaning. It is a statute of limitations, designed to secure the final probate of wills while the facts are within the knowledge of living persons, and to promote the requirement of public policy looking to the speedy settlement of the estates of deceased persons. The plaintiffs were under none of the disabilities mentioned in the statute, at the time of Tilton's decease. The limited time began to run as soon as the decree was made. By neglecting seasonably to take one of the courses thus provided, they have lost the privilege of using legal remedies for making a direct attack upon the decree.

Recognizing this fact, the plaintiffs have petitioned the probate court to set aside the decree. There is no doubt of the court's power to do this, provided sufficient cause is shown. *Morgan* v. *Dodge*, 44 N. H. 255; *Ayer* v. *Messer*, 59 N. H. 279; *Moore* v. *Carpenter*, 63 N. H. 65; *Clough* v. *Moore*, 63 N. H. 111; *Starkey* v. *Kingsley*, 69 N. H. 293; *Reed* v. *Prescott*, 70 N. H. 88. But the power is equitable in nature. It is not exercised upon the mere asking, nor for the sole purpose of overriding rules of law that stand in the way of maintaining proceedings at law. To entitle the plaintiffs to the relief they seek, there must be some substantial ground, such as fraud, accident, or mistake, which renders it against conscience to execute the decree they attack, and of which they were prevented from availing themselves by fraud, accident, or mistake, unmixed with any fraud or negligence on their part. *Clough* v. *Moore, supra,* 112; *Wingate* v. *Haywood,* 40 N. H. 437. They not only do not allege facts which call for the exercise of this power, but the facts reported clearly show that they are not entitled to its exercise. They do not even directly allege that there is any infirmity in the execution of the will, or that the testator when he executed it was of unsound mind or was unduly influenced. That he became ill in the early part of 1888, and soon went to a sanitarium for treatment and was decreed to be insane, falls far short of proving that he was not of sound and dis-

posing mind and memory in October, 1884,—more than three years earlier,—when he made the will. If it were proved, as proposed by the plaintiffs, that he was insane for a long time prior to 1888, the fact would be too indefinite to be of service in establishing the existence of incapacity in 1884.

If there were no other reason, the plaintiffs' laches in the matter would debar them from the remedy they seek. 1 Will. Ex. 395; *Child's Appeal*, 23 N. H. 225. As previously stated, it must be presumed that they knew of their uncle's decease soon after he died. They do not say that they were ignorant of the fact. Parties cannot, " by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on, and those who claim an interest in persons or things must be charged with knowledge of their *status* and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings *in rem*." *Bradley*, J., in *Case of Broderick's Will*, 21 Wall. 503, 519. If the plaintiffs understood that Tilton's domicile was in Denver, and their attention was directed to that locality for the settlement of his estate and the enforcement of their rights therein, they would have learned of the course the proceedings were taking soon after September, 1891, when the will was proved there, if they had exercised reasonable diligence. The probate in Denver was only about three months subsequent to the probate in Belknap county, or nearly nine months before the statute of limitations barred their right to have a re-examination of the probate in that county. If they had no knowledge of the proceedings in either state, their ignorance must be attributable to their gross negligence. Aside from the selfish interests which would impel early inquiry in respect to the disposition of their uncle's property, it appears that more than $40,000 of the income of a trust fund created by the will for the benefit of their sister, Mary Knight, was expended for her maintenance in the family of one of the plaintiffs.

The plaintiffs do not allege that the decree in question was tainted with fraud, or that any fraudulent steps were taken by anybody to deprive them of information concerning Tilton's death or the settlement of his estate, or to mislead them in any way; and no facts are reported having a tendency to show fraud in either respect. They have not shown that there was any mistake on the part of the probate court in assuming jurisdiction of the probate of the will. On the other hand, it affirmatively appears that there was no such mistake. They offer no sufficient excuse for their alleged ignorance, or for their delay in beginning an attack upon the decree. In short, they have utterly failed to show

that the decree was due to fraud, accident, or mistake, or that they were delayed or imposed upon in any way with respect to the matter, or that they have exercised reasonable diligence. It does not appear that it is against conscience to allow the decree to stand and conclude the rights of the plaintiffs as heirs-at-law of Tilton. On the other hand, it appears that it would be against conscience to allow the decree to be attacked after this lapse of more than twelve years and a half, and after the will has been nearly completely executed. The decree of the probate court dismissing the plaintiffs' petition should be affirmed.

*Case discharged.*

All concurred.